**ROHR AIRCRAFT CORPORATION and Franklin C. Wolfe Company, Inc., Plaintiffs,**

v.

**RUBBER TECK, INC., Rubber Teck Sales & Service Co.; Paul A. Karres; Otto R. Grass; Joe P. Kerley, Defendants.**

No. 18237–HW.

United States District Court
S. D. California, C. D.
July 1, 1957.

788

Fulwider, Mattingly & Huntley, Robert W. Fulwider, John M. Lee, Los Angeles, Cal., for plaintiffs.

Fred H. Miller, Stanley A. Phipps, Los Angeles, Cal., for defendants.

WESTOVER, District Judge.

■ This case is one in which a decision is to be made by the Court on the elusive question of invention. The invention in issue concerns a fastener seal to prevent fluid leakage through the opening around bolts, rivets and the like. The seal in question is particularly useful in the aircraft industry where countless numbers of fasteners are passed through the skin and structural members of the ship.

In 1943, during the crisis of World War II, plaintiff Rohr Aircraft Corporation was given the urgent task of constructing integral fuel tanks in the PB2Y–3 aircraft. Prior thereto fuel for the aircraft had been placed in containers within the wings, and it was hoped that by developing a proper fastener the container holding the fuel could be eliminated with the consequent saving of space and weight. Plaintiff proceeded with the problem as presented and later obtained a patent on the two-piece fastener involved in this law suit.

Defendants or their predecessors were given the job of manufacturing the fasteners. Subsequent thereto defendants or their predecessors fell out with plaintiffs, lost the contract to manufacture the fasteners in question, and thereafter began the manufacture of their own fastener. Plaintiffs filed this action, claiming an infringement of its patent and unfair competition.

Two claims are made in the patent. Plaintiffs admit there is no infringement as to Claim 2 but allege there is infringement as to Claim 1. Claim 1 in part sets forth: " * * * a washer of rigid material, having a center bore surrounding the shank of the fastener and adapted to make rigid contact with the head of the fastener and a tank wall, and a rubber-like doughnut shaped ring positioned within the bore of the washer, said ring having a diameter greater than the thickness of the washer * * * " so that when pressure is applied the ring is deformed into sealing contact with the bore of the washer, the shank, the head of the fastener and the continuous portion of said wall.

Claim 2 is similar to Claim 1, except that instead of claiming a rubber-like doughnut shaped ring, the claim is a "rubber-like ring, having a body of circular cross-section and a greater diameter than the thickness of the sealing washer."

■ Evidently plaintiffs claim infringement because of the use of the term "rubber-like doughnut shaped ring." At the trial the Court inquired of plaintiffs as to the meaning of the term "rubber-like doughnut shaped ring," and the only interpretation the Court could obtain was "a ring shaped like a doughnut." In both claims there is a rubber ring. In both claims the rubber ring has a diameter greater than the thickness of the washer so that when pressure is applied the ring will be deformed and fill the space between the bore, the shank, the head of the fastener and the walls. A doughnut shaped ring is certainly a ring that has a circular cross-section.

Although plaintiffs do not designate the rubber rings used in the patent as "O" rings, nevertheless, the Court is of the opinion that the two rings described in the patent must be regarded as be-

longing to the O-ring family. There is no question but that the use of steel washers is old in the art, and O rings were used many years prior to plaintiff's patent as a sealing ring.

Defendants, in developing their fastener, vulcanized or attached the rubber ring to the steel washer, making it a one-piece fastener. Plaintiffs contend the rubber ring which was used by defendants in their fastener is a "rubber-like doughnut shaped ring." Inasmuch as plaintiffs used the term "rubber-like doughnut shaped ring" in the patent, this term must be strictly construed as against them. The Court is of the opinion the rubber ring used by defendants is not a doughnut shaped ring and, as a consequence, there is no infringement as to Claim 1.

■ Defendants contend the patent is invalid. Plaintiff's invention consists of a metal washer which was in the public domain and a rubber-like "doughnut shaped ring" which plaintiffs claim to be new. Evidence in the case disclosed that prior to plaintiffs' patent rubber O-rings had been inserted inside steel washers. Plaintiffs' claim must rest upon the shape of the ring, i. e., "doughnut shaped." It is plaintiffs' contention that when pressure is applied the doughnut shaped ring will be distorted or deformed so that it will fill up the voids between the bore of the washer, the shank, the head of the fastener and the wall. Plaintiffs contend there is something about a doughnut shaped ring that makes it more adaptable to being deformed than any other shape ring.

It is apparent from the patent that the doughnut shaped ring has a greater thickness than the washer, but the Court cannot see any reason why a rubber ring, when compressed, will distort easier if it is doughnut shaped than it would if it had a circular cross-section. In other words, when pressure is applied the rubber has to be deformed regardless of the shape it is in at the time the pressure is brought to bear.

The claim states that the rubber-like doughnut shaped ring has a greater diameter than the thickness of the washer. It does not say how much greater—only greater. When there is a certain void to be filled that void can be ascertained either by mathematical calculation or by a trial and error method. We assume that mathematicians could take the area to be filled, the size of the shank, the head of the fastener and the walls and determine mathematically just how much rubber would be needed to fill the void. On the other hand, the amount of rubber required could be determined by a trial and error method. Thus we come to the question whether or not the determination of the amount of rubber to be used in the sealing ring, either by a mathematical calculation or by trial and error, is invention. We are of the opinion that plaintiffs' claim lacks the definition of "invention" as pronounced by the Supreme Court.

■ In addition plaintiffs claim unfair competition. Plaintiffs' complaint alleges that defendants appropriated certain trade secrets which were obtained from plaintiffs when defendants or the predecessors of defendants were manufacturing the seals in question. During pretrial conference and discovery proceedings defendants attempted to ascertain from plaintiffs the trade secrets which were alleged to have been appropriated. Defendants were unable to obtain such information. At the trial the officers of the corporation were asked what trade secrets were appropriated, and they were unable to designate the trade secrets referred to in the complaint.

At the time of trial the Court was of the opinion there might be unfair competition because of similarity of names of the two seals. The Court was primarily of the opinion that because plaintiffs had called their seal "Stat-O-Seal" and the defendants had named their product "Duoseal" there might be some confusion of names; but it appears from the evidence produced that the term "o-seal" had been used for many years by parties other than those represented in this litigation. Such names as "Aero-

seal", "Belloseal", "Flexoseal", "Auto-seal" and many, many others have used the combination of "o-seal." Consequently, the Court is of the opinion plaintiffs do not have any priority to use the "o-seal" combination.

■ It is true that plaintiffs were able to produce one instance in which there had been a confusion between plaintiffs' seal and the defendants' seal; but it is admitted that the seals in question are sold by the thousands to a multitude of manufacturers, and to produce one, isolated incident where there is a confusion does not establish confusion within the meaning of the law. Consequently, the Court will hold there is no unfair competition as alleged in plaintiffs' complaint.

No merit is found in defendants' counter-claim, and judgment on the counter-claim will be in favor of plaintiffs.

Defendants ask for attorney fees, but the Court is not of the opinion that this is a case justifying the award of attorney fees.

Judgment will be ordered in favor of defendants on the complaint and against defendants on the counter-claim. Defendants' counsel is instructed to prepare findings of fact and judgment in conformity with this memorandum for presentation to the Court for signature on or before August 5, 1957.